**NATIONAL FOREIGN TRADE COUNCIL, Plaintiff,**

v.

**Charles D. BAKER, in his official capacity as Secretary of Administration and Finance of the Commonwealth of Massachusetts, and, Philmore Anderson, III, in his official capacity as State Purchasing Agent for the Commonwealth of Massachusetts, Defendants.**

**CA No. 98–10757–JLT.**

United States District Court, D. Massachusetts.

Nov. 4, 1998.

---

Timothy B. Dyk, Robert H. Klonoff, Gregory A. Castanias, Melissa Hart, Jones, Day, Reavis & Pogue, Washington, DC, Jacqueline M. Holmes, Jones, Day, Reavis & Pogue, New York, NY, Michael A. Collora, Dwyer & Collora, Boston, MA, for National Foreign Trade Council.

Thomas A. Barnico, Attorney General's Office, Boston, MA, for Charles D. Baker, Philmore III.

Andrew N. Vollmer, John A. Trenor, Wilmer, Cutler & Pickering, Washington, DC, James D. Smeallie, Sherburne, Powers & Needham, Boston, MA, for U.S. Chamber of Commerce, Organization for International Investment.

David G. Leitch, Gil A. Abramson, Roger P. Alford, Hogan & Hartson, Washington, DC, Richard L. Weiner, Hogan & Hartson L.L.P., Washington, DC, for European Union.

Daniel J. Popeo, Washington Legal Foundation, Washington, DC, Evan Slavitt, Gads-

by & Hannah LLP, Boston, MA, David M. Young, Washington Legal Foundation Washington, DC, for Washington Legal Foundation.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff National Foreign Trade Council ("NFTC") brings this action against two officials of the Commonwealth[1] seeking a declaratory judgment that the so-called "Massachusetts Burma Law"[2] is unconstitutional.

The Massachusetts Burma Law is a procurement statute that prohibits the Commonwealth and its agents from purchasing goods or services from anyone doing business with the Union of Myanmar (formerly known as the Nation of Burma). The statute authorizes the Operational Services Division (OSD), an agency within the Executive Office of Administration and Finance, to establish a "restricted purchase list" of companies "doing business with Burma" as defined by the statute. Once OSD makes a preliminary finding that a company does business with Myanmar, the company can submit a sworn affidavit to refute the finding. OSD then makes a final decision whether to place a company on the "restricted purchase list."

The Commonwealth is allowed to procure from a "restricted purchase list" company only when: (1) the procurement is essential and the restriction would eliminate the only bid or offer, or would result in inadequate competition, M.G.L.A. ch. 7, § 22H(b); (2) the Commonwealth is purchasing certain medical supplies, § 22I; or (3) there is no "comparable low bid or offer"[3] by an unrestricted bidder, § 22H(d).

Plaintiff claims that the Burma Law is invalid because it (1) intrudes on the federal government's exclusive power to regulate foreign affairs; (2) discriminates against and burdens international trade in violation of the Foreign Commerce Clause; and (3) is preempted by a federal statute and an executive order imposing sanctions on Myanmar.

Before the court are the parties' cross motions for summary judgment. For reasons stated below, the court finds that the Massachusetts Burma Law impermissibly infringes on the federal government's power to regulate foreign affairs.

## I.

## ANALYSIS

### A. STANDING

▮▮▮ Defendants argue that Plaintiff[4] lacks standing to sue because its members have not been injured by the Burma Law. The Supreme Court's test for organizational standing provides that an association may sue on behalf of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

Plaintiff NFTC satisfies the first prong of the *Hunt* test. As shown by the parties' Joint Stipulation, NFTC members on the "restricted purchase list" cannot bid on Massachusetts contracts on an equal basis.[5] Those members could, therefore, sue on an individual basis. *See Clinton v. City of New*

1. Charles D. Baker, the Secretary of Administration and Finance of the Commonwealth of Massachusetts, and Philmore Anderson, III, the State Purchasing Agent for the Commonwealth of Massachusetts.

2. Act of June 25, 1996, Chapter 10, § 1, 1996 Mass. Acts 210, codified at Mass. Gen. Laws, Ch. 7, §§ 22G–22M.

3. A "comparable low bid," as defined by the statute, is one that is up to 10% higher than a bid from a company on the restricted list. In essence, a company on the "restricted purchase list" can only win the bid if its offer is at least

10% lower than the lowest bid by an unrestricted company.

4. Plaintiff NFTC, a nonprofit corporation, has strongly advocated open international trade and investment since its founding in 1914.

5. The parties have stipulated that: (1) more than thirty NFTC members are on the "restricted purchase list;" (2) some NFTC members have severed their business connections with Myanmar, thereby affecting their competitive edge in the global market; (3) at least one member, who had contracts with Massachusetts in the past, did not

*York* — U.S. —, —, 118 S.Ct. 2091, 2100, 141 L.Ed.2d 393 (1998) (holding that "Probable economic injury resulting from [governmental actions] that alter competitive conditions" satisfy the 'injury-in-fact' requirement of Article III and, therefore, anyone who is "likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test") (quoting 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3d ed.1994)). *See also Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville,* 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (holding that the plaintiff had standing because it was "able and ready to bid on contracts and that a discriminatory policy prevent[ed] it from doing so on an equal basis").

Plaintiff also satisfies the second prong of *Hunt.* The Joint Stipulation states, "Founded in 1914, the NFTC has historically represented its members' interests in the area of foreign trade." Joint Stipulation ¶ 2. *See also* Declaration of Frank D. Kittredge ¶ 5. The NFTC is "organized and authorized to represent the interests of its members in free international trade and commerce." The NFTC Resolution of April 21, 1998, Exhibit 2 of the Joint Stipulation. Challenging statutes like the Massachusetts Burma Law, which acts as a barrier to free trade, is "germane" to the organization's purpose.

Plaintiff seeks declaratory judgment prohibiting enforcement of the Burma Law. Neither the claims nor the relief requested in Plaintiff's Complaint requires participation by individual members. Plaintiff, therefore, satisfies the third prong of the *Hunt* test, and has standing to bring this action on behalf of its members.

## B. CONSTITUTIONALITY OF THE MASSACHUSETTS BURMA LAW

### 1. *The Constitution Grants Federal Government Exclusive Authority Over Foreign Affairs*

Under our constitutional framework, the federal government has exclusive authority to conduct foreign affairs. Numerous constitutional provisions evidence the Framers' intent to vest plenary power over foreign affairs in the federal government. Article I, § 8, cls. 1 and 3 give Congress sole authority to provide for the common defense, and to regulate commerce with foreign nations. Article II, § 2, cl. 2 authorizes the President to make treaties and appoint ambassadors. Article I, § 10, cls. 1–3 prohibit the states from making treaties, entering into agreements with other countries, or imposing duties on imports and exports. These provisions demonstrate that "one of the main objects of the Constitution [was] to make us, as far as regarded our foreign relations, one people, and one nation." *Holmes v. Jennison,* 39 U.S. (14 Pet.) 540, 575, 10 L.Ed. 579 (1840).

The Supreme Court has consistently recognized the exclusive role assigned to the federal government in the area of foreign affairs. The Court has admonished, "[p]ower over external affairs is not shared by the States; it is vested in the national government exclusively." *United States v. Pink,* 315 U.S. 203, 233, 62 S.Ct. 552, 86 L.Ed. 796 (1942); *see also United States v. Belmont,* 301 U.S. 324, 331, 57 S.Ct. 758, 81 L.Ed. 1134 (1937) ("Complete power over international affairs is in the national government and is not and cannot be subject to any curtailment or interference on the part of the several states.").

The Supreme Court, in *Zschernig v. Miller,* 389 U.S. 429, 434–35, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968), declared invalid state laws with more than "some incidental or indirect effect in foreign countries," or that have "great potential for disruption or embarrassment" of United States foreign policy. *Zschernig* involved a probate law that conditioned the right of a nonresident alien to inherit property from an Oregon resident on reciprocal treatment by the beneficiary's country of origin. Even though probate matters are within the traditional jurisdiction of the states, and even though the Oregon stat-

bid on new contracts because of the statute; and (4) at least one member on the "restricted purchase list" lost a contract prior to joining NFTC

because its bid was not 10% lower than the winning bid. *See* Joint Stipulation ¶¶ 30, 36–37, 32, and 38.

ute was facially neutral, the Supreme Court struck it down under the foreign affairs doctrine, because of its possible effect on foreign nations. *Id.* *Zschernig* teaches that states and municipalities must yield to the federal government when their actions affect significant issues of foreign policy.

## 2. Massachusetts Burma Law Impermissibly Burdens U.S.-Foreign Relations

■ The Massachusetts Burma Law has more than an "indirect or incidental effect in foreign countries," and a "great potential for disruption or embarrassment." *Zschernig,* 389 U.S. at 434–35, 88 S.Ct. 664, 19 L.Ed.2d 683. It, therefore, unconstitutionally impinges on the federal government's exclusive authority to regulate foreign affairs.

The Commonwealth concedes that the statute was enacted solely to sanction Myanmar for human rights violations and to change Myanmar's domestic policies. Indeed, its legislative history makes this intent clear. Representative Rushing of the Massachusetts House of Representatives stated that "if you're going to engage in foreign policy, you have to be able to identify a goal that you will know when it is realized . . . . [T]he identifiable goal is, free democratic elections in Burma." MA House Debate on H2833: July 19, 1995, transcript at 4–5. State Senator Hicks criticized the bill as an improper attempt to make foreign policy: "This particular body has no particular responsibility to make a statement on this . . . international matter. [T]he appropriate forum . . . would be the U.S. Congress." MA Senate Debate on H2833: April 10, 1996, transcript at 10.

The *amicus* briefs here as well as the Joint Stipulation further demonstrate the Burma Law's disruptive impact on foreign relations. The European Union (EU), as an *amicus,* observes that the Massachusetts Burma Law: (1) interferes with the normal conduct of EU–U.S. relations; (2) raises questions about the ability of the U.S. to honor international commitments it has entered in the framework of the World Trade Organization (WTO); and (3) poses a great risk to the

proliferation of similar state sanction laws, which in turn would aggravate international tensions.[6] *See* EU Brief, p. 2; *see also* Joint Stipulation ¶ 40 & Exhibit 15, Ambassador Hugo Paeman's Letter to then-Governor Weld of Massachusetts (stating that the Burma Law is a breach of the WTO agreements, and would have a "damaging effect on bilateral EU–US relations"). Japan and the Association of the South East Asian Nations (ASEAN) also filed complaints against the statute with the U.S. government. *See* Joint Stipulation, ¶ 42. Both EU and ASEAN formally noted their oppositions to the Burma Law at the WTO in June and July of 1997. *See* Joint Stipulation, ¶¶ 41–42.

Defendants argue that the Burma Law does not intrude on the federal government's foreign affairs power because: (1) the Constitution permits certain state actions that indirectly affect foreign affairs; (2) the Burma Law does not establish a direct contact between the state and the Nation of Myanmar; (3) important state interests embodied in the First and Tenth Amendments justify the statute; and (4) as the foreign affairs' doctrine is itself "vague," the court should leave to the legislative branch the issue of whether to invalidate the Massachusetts Burma Law and similar state procurement statutes.

Defendants first challenge the scope of the foreign affairs power, and argue that the Burma Law does not infringe on what they view as a more limited federal government power. In an attempt to confine the federal government's foreign relations power, Defendants cite the following federal and state court decisions upholding selective purchasing and divestment statutes. *Trojan Tech., Inc. v. Com. of Pennsylvania,* 742 F.Supp. 900, 903 (M.D.Pa.1990), *aff'd,* 916 F.2d 903, 913–14 (3d Cir.1990) (upholding a Pennsylvania statute that required U.S.-made steel in all state construction projects); *Board of Trustees v. Mayor and City Council of Baltimore,* 317 Md. 72, 562 A.2d 720, 744 (Md. 1989) (upholding a Baltimore statute that withdrew city's investments from South Africa); and *K.S.B. Technical Sales Corp. v. New*

---

**6.** There are currently eighteen municipal sanction laws issued against Myanmar. *See* Joint Stipulation, ¶ 44. Massachusetts itself is planning to introduce a similar legislation against Indonesia. *Id.* at exhibit 15.

*Jersey Dist. Water Supply Comm'n,* 75 N.J. 272, 381 A.2d 774, 782–84 (N.J.1977) (upholding a New Jersey "Buy American" statute).[7]

None of these cases is persuasive precedent with respect to the circumstances at issue here. *Trojan,* 742 F.Supp. 900, 903–04, and *K.S.B. Technical Sales,* 75 N.J. 272, 381 A.2d 774, 782–84, involved "Buy American" statutes, whose purpose and effect were to create jobs and promote economic development at home. Although these statutes benefitted Americans economically, they did not single out a particular foreign country for particular treatment, as does the Massachusetts Burma Law. The Third Circuit specifically distinguished the statute in *Trojan* from the one in *Zschernig* on this basis. *See* 916 F.2d at 913 (holding that the Pennsylvania statute applied to "steel from any foreign source, regardless of whether the source country might be considered friend or foe," and therefore, unlike the Oregon statute struck down in *Zschernig,* did not involve the state in the conduct of foreign affairs). Furthermore, at least one court has held that even Buy–American statutes may violate the foreign affairs doctrine. *See Bethlehem Steel Corp. v. Board of Com'rs,* 276 Cal.App.2d 221, 224–26, 80 Cal.Rptr. 800 (1969) (holding unconstitutional a California "Buy American Law" that awarded state construction contracts only to companies that agreed to use American-made products).

The Baltimore statute in *Board of Trustees* required the City to withdraw its investments in South Africa. *See* 317 Md. 72, 562 A.2d 720. Unlike the Massachusetts Burma Law, the Baltimore statute only modified the City's own conduct, and did not seek to influence individuals or companies in their private commercial activities. *Id.*

Several lower federal and state court decisions support the conclusion that the Burma Law unconstitutionally burdens the federal foreign affairs power. In *Springfield Rare Coin Galleries, Inc. v. Johnson,* 115 Ill.2d 221, 104 Ill.Dec. 743, 503 N.E.2d 300, 305 (Ill.1986), the Illinois Supreme Court held unconstitutional a provision that exempted

sales tax on all rare coins except for South African Krugerrands. In *New York Times Co. v. City of New York Comm'n on Human Rights,* the New York Court of Appeals reversed New York City Commission on Human Rights's ruling and upheld New York Time's practice of accepting employment advertisements from South African employers. *See* 41 N.Y.2d 345, 393 N.Y.S.2d 312, 361 N.E.2d 963, 968 (N.Y.1977) ("Even longstanding State regulation of traditional fields of law, such as the rules governing the descent and distribution of estates, must fall by the wayside if enforcement of State regulations would 'impair the effective exercise of the Nation's foreign policy.' ") (quoting *Zschernig,* 389 U.S. at 440, 88 S.Ct. 664). In *Tayyari v. New Mexico State Univ.,* 495 F.Supp. 1365, 1376 (D.N.M.1980), the U.S. District Court for the District of New Mexico invalidated a motion passed by the Regents of the State University that denied Iranian students admissions and readmissions until the return of American hostages. The District Court held that the Regents' true purpose was "to make a political statement." *Id.* at 1376. These holdings are consistent with the Supreme Court's decision in *Zschernig,* and bolster the conclusion that the Massachusetts Burma Law is an unconstitutional infringement on the federal government's power over foreign affairs.

In another effort to avoid the sweep of the foreign affairs doctrine, Defendants argue that the Burma Law does not establish direct contact between Myanmar and the Commonwealth. This is true, but irrelevant under the *Zschernig* test. *Zschernig* examines the substantive impact a state statute has on foreign relations. *See* 389 U.S. at 434–35, 88 S.Ct. 664. The Massachusetts Burma Law was designed with the purpose of changing Burma's domestic policy. This is an unconstitutional infringement on the foreign affairs powers of the federal government. State interests, no matter how noble, do not trump the federal government's exclusive foreign affairs power. *Cf. U.S. v. Pink,* 315 U.S. 203, 233, 62 S.Ct. 552, 86

---

**7.** *North American Salt Co. v. Ohio Dept. of Transp.,* 122 Ohio App.3d 213, —— N.E.2d ——, 1997 WL 447643 (Ohio App. 10 Dist.1997) recently joined this line of state precedents, wherein the Court of Appeals of Ohio upheld an Ohio "Buy American" statute.

L.Ed. 796 (1942); *U.S. v. Belmont,* 301 U.S. 324, 331, 57 S.Ct. 758, 81 L.Ed. 1134 (1937).

Plaintiff also argues that the statute is invalid because (1) federal law preempts the Massachusetts Burma Law; and (2) The Massachusetts Burma Law violates the Foreign Commerce Clause. Because neither argument is dispositive in this case, this opinion does not address them in detail, but offers the following observations.

■ Plaintiff argues that "actual conflict" between the Omnibus Consolidated Appropriations Act of 1997 and the Massachusetts Burma Law impliedly preempts the Burma Law.

■ To establish preemption, Plaintiff must show that Congress intended to exercise its authority to set aside a state law. *See Philip Morris, Inc. v. Harshbarger,* 122 F.3d 58, 67 (1st Cir.1997). Plaintiff's burden is particularly heavy because Plaintiff argues implied, rather than express, preemption. *Id.* Plaintiff has failed to carry this burden.

The alleged main conflict between the statutes was the federal government's intent to utilize multilateral sanctions with other nations and the Burma Law's unilateral approach. This argument is not persuasive, because the federal statute actually provides for unilateral sanctions against Myanmar. The evidence does not establish sufficient actual conflict for this court to find implied preemption. *See Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 131, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) (courts will not infer preemption based on speculation; conflict must be real).

Plaintiff offers the Foreign Commerce Clause as another ground for invalidating the Massachusetts Burma Law. *See U.S. Const.,* art. I, § 8, cl. 3; *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 449, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979) (holding that state regulations that discriminate against foreign commerce or impede the federal government's ability to "speak with one voice when regulating commercial relations with foreign governments" are unconstitutional). Defendant raises as a defense the market-participant exception to the dormant Commerce Clause. *See White v. Massachusetts*

*Council of Constr. Employers, Inc.,* 460 U.S. 204, 208, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983). Although the Third Circuit has extended this exception to foreign commerce, neither the Supreme Court nor the First Circuit has addressed the issue. *See Trojan Tech., Inc. v. Com. of Pennsylvania,* 916 F.2d 903, 909–13 (3d Cir.1990) (holding that "Buy American" statutes which affect foreign commerce are not subject to review under the Foreign Commerce Clause).

This court need not decide whether or how the market-participant exception applies to foreign commerce, as the Massachusetts Burma Law is an unconstitutional infringement of federal government's power over foreign affairs.

Massachusetts' concern for the welfare of the people of Myanmar as manifested by this legislative enactment, may well be regarded as admirable. But, under the exclusive foreign affairs doctrine, the proper forum to raise such concerns is the United States Congress.

## C. *MOTION TO AMEND THE COMPLAINT*

■ Plaintiff seeks to amend its Complaint to allege a 42 U.S.C. § 1983 violation by the state officials, which would entitle Plaintiff to attorneys' fees under § 1988. As this motion is unopposed and would not prejudice Defendants, it is allowed.

## II.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment and its unopposed Motion to Amend the Complaint are ALLOWED. Defendants' Cross Motion for Summary Judgment is DENIED.